**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DRAKE ENTERPRISES, INC., a Louisiana corporation, STRONGSEAL RECYCLED RUBBERIZED PRODUCTS, LLC, a limited liability company organized under the laws of the State of Florida; STRONGSEAL MANUFACTURING, LLC, a limited liability company organized under the laws of the State of South Carolina; ROOF TREADS, LLC, a limited liability company organized under the laws of Florida,<br><br>                Plaintiffs,<br><br>        v.<br><br>COLLOID ENVIRONMENTAL TECHNOLOGIES COMPANY, a Delaware corporation,<br><br>                Defendant. | Case No. 08-CV-6753<br><br>Judge Marovich<br><br>Magistrate Judge Nolan |

**MEMORANDUM IN SUPPORT OF DEFENDANT CETCO'S
MOTION TO DISMISS COUNTS I, II, AND III OF PLAINTIFFS' COMPLAINT**

Defendant Colloid Environmental Technologies Company ("CETCO"), by its attorneys, Jennifer A. Kenedy and Julia C. Webb, in support of Defendant CETCO's Motion to Dismiss Counts I, II and III under Federal Rule of Civil Procedure 12(b)(6), states as follows:

<u>INTRODUCTION</u>

Plaintiffs in this case allege that CETCO owes them various undetermined amounts. In Counts I and II of the Complaint, Plaintiff Drake Enterprises, Inc. ("Drake") brings an action for accounting and breach of contract, respectively, alleging that it is owed royalty payments pursuant to an agreement whereby CETCO was granted a license to manufacture, produce, and

sell products protected by United States patent number 6,194,519 ("the Patent"). In Counts III

and IV of the Complaint, Plaintiffs StrongSeal Rubberized Products, LLC, StrongSeal

Manufacturing, LLC, and Roof Treads, LLC (collectively, "StrongSeal / Roof Treads") also

bring claims for an accounting and for breach of contract, respectively, alleging that CETCO has

failed to pay a certain earn-out consideration pursuant to an Asset Purchase Agreement.

CETCO brings this Motion to Dismiss on the grounds that Counts I, II, and III fail to

state a claim upon which relief can be granted in violation of Federal Rule of Civil Procedure

12(b)(6). Counts I and III, which purport to bring causes of action for accounting, must be

dismissed because Plaintiffs' breach of contract claims provide an adequate remedy at law.

Count II must be dismissed because Plaintiffs cannot maintain a cause of action for breach of

contract against CETCO based upon a contract to which CETCO was not a party.

<u>FACTUAL ALLEGATIONS IN THE COMPLAINT</u>

Plaintiff Drake brings two claims against CETCO: (a) an equitable action for accounting

(Count I), and (b) a breach of contract claim (Count II). Both claims are based on the same

factual allegations, and request substantially similar relief. In both claims, Drake alleges that

CETCO entered into a written agreement with Drake on August 4, 2003, and that a copy of that

agreement is attached to the Complaint as Exhibit A. (Compl. at p. 2 ¶ 6).[1] The document

attached to Plaintiffs' Complaint as Exhibit A, however, appears to be incomplete, is executed

only by Drake, and does not provide a signature line for CETCO. (*See* Compl. Ex. A). Drake

alleges that in this "agreement", CETCO agreed to pay to Drake a license fee of 4% of its net

sales of the products protected by the Patent in the United States, or at least a minimum royalty

payment of $100,000 per year. (Compl. at pp. 3-4 ¶¶ 12-13; Compl. at p. 5 ¶¶ 11-12). Drake

---

[1] Plaintiffs failed to number the paragraphs of the Complaint consecutively throughout. Therefore, to prevent confusion, CETCO will provide both a page number and a paragraph number when citing to the Complaint in this Motion.

asserts, upon information and belief, that CETCO has "collected large sums of money", and that an accounting will show that "a large sum of money" is due to Drake. (Compl. at p. 4 ¶¶ 14-15). In the Complaint, Drake alleges that it has requested but not received an accounting from CETCO. (Compl. at p. 4 ¶ 16; Compl. p. 6 ¶ 13). Drake maintains that CETCO's failure to pay Drake at least $500,000 constitutes a breach of contract, and asks this Court to order CETCO to pay all sums allegedly due to Drake and to order an accounting. (Compl. at pp. 4-5; Compl. at p. 6 ¶ 15).

StrongSeal / Roof Treads also bring two claims against CETCO: (a) an equitable action for accounting (Count III), and (b) a breach of contract claim (Count IV). Both of StrongSeal / Roof Treads' claims are also based on the same factual allegations, and request substantially similar relief. StrongSeal / Roof Treads alleges that CETCO entered into an Asset Purchase Agreement with them in August 2003. (Compl. at p. 3 ¶ 7). Similar to Drake, StrongSeal / Roof Treads also allege that CETCO has "collected large sums of money", and that an accounting will show that "large sums of money" are due to StrongSeal / Roof Treads. (Compl. at p. 7 ¶ 13-14). StrongSeal / Roof Treads allege that CETCO agreed to pay certain "earn-out consideration" pursuant to the August 2003 Asset Purchase Agreement, a draft of which was attached to the Complaint as Exhibit B. (Compl. at p. 7 ¶ 11). StrongSeal / Roof Treads contend that CETCO has failed to pay them any "earn-out consideration", and that therefore CETCO has breached the Asset Purchase Agreement. (Compl. at p. 9 ¶¶ 15-16). Finally, StrongSeal / Roof Treads allege that they have requested but not received an accounting from CETCO. (Compl. at p. 7 ¶ 15; Compl. at p. 9 ¶ 14). StrongSeal / Roof Treads ask this court to order CETCO to pay all sums due to StrongSeal / Roof Treads and to order an accounting. (Compl. at pp. 8-9; Compl. at pp. 9-10).

In addition to the allegations set forth above, Plaintiffs assert that at the time that Plaintiffs' agreements with CETCO were executed in August 2003, Drake was the exclusive licensee of the Patent and StrongSeal / Roof Treads were the exclusive sub-licensees of the Patent. (Compl. at p. 3 ¶ 8-9).

### STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) is proper where the plaintiff lacks a cognizable legal theory, or where there is a cognizable legal theory but the plaintiff fails to allege sufficient facts to support the claim. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. In deciding a motion to dismiss for failure to state a claim, the court is not obligated to accept as true conclusory allegations. *See Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 896 (7th Cir. 2001).

Written instruments attached to a complaint are "part of the pleading for all purposes" and may be considered on a motion to dismiss. FED. R. CIV. P. 10(c); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "Where a plaintiff's cause of action arises out of a contract which is attached to the complaint as an exhibit, and such attachment shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate." *Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 876 (7th Cir. 1995). "While the Federal Rules of Civil Procedure only require notice pleading, a party can plead oneself out of court." *Bergstrom v. Northeast Illinois Regional Commuter Railroad Corporation, et al.*, No. 03-C-3151, 2004 U.S. Dist. LEXIS 14324, *5 (N.D. Ill. May 18, 2004) (citing *Trevino v. Union Pacific R.R. Co.*, 916 F.2d 1230, 1234 (7th Cir. 1990)).

<u>ARGUMENT</u>

## I. PLAINTIFFS CANNOT STATE A CLAIM FOR ACCOUNTING IN COUNTS I AND III BECAUSE THEY HAVE AN ADEQUATE REMEDY AT LAW.

Plaintiffs' claims for accounting should be dismissed because Plaintiffs cannot bring claims for an accounting alongside claims for breach of contract based on identical conduct and seeking identical relief.

In order to plead an equitable claim for an accounting, a plaintiff must adequately allege the absence of an adequate remedy at law. *Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772, 778 (N.D. Ill. 2006); *3Com Corp. v. Elec. Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 941 (N.D. Ill. 2000); *Midwest Neoped Assocs., Ltd. v. Allmed Fin. Corp.*, No. 98-C-6973, 1999 U.S. Dist. LEXIS 13278, *4 (N.D. Ill. Aug. 19, 1999). "'[T]he lack of an adequate legal remedy' is a precondition to asserting an accounting claim." *Humana Health Plan, Inc. v. Heritage Ind. Med. Group, P.C.*, No. 99-C-6276, 2001 U.S. Dist. LEXIS 78, *5 (N.D. Ill. Jan. 2, 2001). Although two exceptions to this rule exist where the accounting claim is based on an alleged breach of fiduciary duty or the accounts at issue are so complicated that "only a court of equity can unravel them", Plaintiffs do not allege facts to bring themselves within either exception here. *See id.* at *5 (quoting *Oil Express National, Inc. v. Latos*, 966 F. Supp. 650, 652 (N.D. Ill. 1997)).

A claim for breach of contract provides an adequate legal remedy where, as here, a plaintiff bases both causes of action on the same or substantially similar allegations and would be entitled to request financial information and business records in the normal course of discovery on its breach of contract claim. *See Cole-Haddon*, 454 F. Supp. at 778; *see also Humana Health Plan, Inc.* at *5; *3Com Corp.*, 104 F. Supp. 2d at 941-42; *Midwest Neoped Assocs., Ltd.*, 1999 U.S. Dist. LEXIS 13278 at *4-5. In *3Com*, the Northern District of Illinois dismissed a claim for

-5-

an accounting simply because the plaintiff's complaint also included a claim for breach of

contract. *3Com Corp.*, 104 F. Supp. 2d at 941. The Northern District of Illinois explained this

rule in more detail in *Midwest Neoped Associates*, where the court dismissed an accounting

claim that was brought at the same time as a "run-of-the-mill breach of contract claim with

complicated damage calculations" where "[a]ll of the accounting information pertinent to [the

cause of action for accounting] would be revealed through discovery". 1999 U.S. Dist. LEXIS

13278 at *4. The court reasoned that "the accounting claim gives Plaintiff nothing it does not

have in [its breach of contract claim] and is therefore superfluous." *Id.* at *5.

Similarly, in this case, Plaintiffs' cause of action for accounting is based on the identical

conduct and requests nearly identical relief from this Court. Plaintiffs' accounting claim does

not ask for any financial information or business records that could not be duly requested during

the normal course of discovery on their breach of contract claims. Therefore, Plaintiffs' breach

of contract claims provide an adequate remedy at law here, and Plaintiffs' equitable claims for

accounting in Counts I and III must be dismissed because Plaintiffs cannot state a claim.[2]

## II. PLAINTIFF DRAKE CANNOT STATE A CLAIM FOR BREACH OF CONTRACT THAT IS BASED ON AN AGREEMENT TO WHICH CETCO WAS NOT A PARTY.

In order to satisfy the federal pleading standards for a breach of contract claim, the

plaintiff must make a specific reference to the written agreement between the parties. *Murphy v.

White Hen Pantry Co.*, 691 F.2d 350, 352 (7th Cir. 1982) (finding that a plaintiff failed to meet

his pleading burden where he failing to specify what term of the contract was allegedly

breached). The only document referred to by Drake in its breach of contract claim is "Exhibit

---

[2] Plaintiffs' conclusory assertions that they have no adequate legal remedy do not save their claims for accounting because, contrary to Plaintiffs' assertions, they will indeed be able to obtain access to CETCO's financial records and accounts during the discovery process. (*See* Compl. at p. 4 ¶ 17; Compl. at p. 8 ¶ 16). Moreover, this Court is not required to accept as true conclusory allegations. *See Snodderly*, 239 F.3d at 896.

A", which appears to be the second of two pages of a Consent to Assignment executed by Drake on August 4, 2003.[3]

Drake generally alleges that "[p]ursuant to the terms of [the Consent to Assignment], the **Defendant CETCO agreed …**" to make various payments. (Compl. at p. 5 ¶ 11) (emphasis added). The Consent to Assignment, however, states only that "**Drake agrees that CETCO shall pay**" these amounts. (Ex. 1 hereto at ¶ 4) (emphasis added). The document states that it "is given by Drake," and there are no signature lines for anyone other than Drake. (Ex. 1). Indeed, nothing in the Consent to Assignment indicates that CETCO is somehow a party. The Consent to Assignment appears to be exactly what its title and content would indicate – a consent to the assignment of two sublicense agreements from StrongSeal / Roof Treads to CETCO, which was required under the sublicense agreements between Drake and StrongSeal / Roof Treads before the assignments could occur. (*See* Ex. 1).

Under Illinois law, "[t]he obligations of a contract cannot be enforced against an entity that is not a party to the contract." *Oncology Therapeutics Network Joint Venture, L.P. v. Olympia Fields Internal Med. Assocs., S.C., et al.*, No. 01-C-2079, 2003 U.S. Dist. LEXIS 8073, *9 (N.D. Ill. May 12, 2003) (denying plaintiff's motion for summary judgment where plaintiff based its breach of contract claim on an agreement to which defendant was not a party); *see also Klesman & Assocs., Inc.*, 1998 U.S. Dist. LEXIS 16123 at *6 (explaining that "a breach of contract action requires the party bringing the suit to have a contractual relationship with the

---

[3] CETCO has attached a complete copy of the Consent to Assignment to this Motion as Exhibit 1. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Klesman & Associates, Inc. v. WeatherCo, Inc.*, No. 98-C-3257, 1998 U.S. Dist. LEXIS 16123, *5 (N.D. Ill. Oct. 6, 1998) (citing *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993), and *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 739 n.12 (7th Cir. 1986)). Therefore, as Drake refers to the Consent to Assignment several times and it is clearly central to Drake's claim, this Court may consider the *complete* Consent to Assignment CETCO attaches to this Motion when considering the same.

party being sued"); *Braman v. Woodfield Gardens Associates, et al.*, 715 F. Supp. 226, 228 (N.D. Ill. 1989) ("To state a claim for breach of contract, plaintiffs must establish privity of contract with defendants ..."). The Consent to Assignment, on its face, demonstrates that CETCO was not a party to that document. Drake has not alleged that CETCO somehow became a party to the Consent to Assignment after the fact. Therefore, Drake can not state a breach of contract claim against CETCO for violation of the Consent to Assignment because CETCO was not a party to or in any way bound by the Consent to Assignment. *See TNT Logistics North America, Inc. v. Bailly Ridge TNT, LLC, et al.*, No. 05-C-7219, 2006 U.S. Dist. LEXIS 73316, *22-23 (N.D. Ill. Sept. 21, 2006) (dismissing breach of contract claim against defendant because defendant was not a party to the contract upon which the claim was based); *Bergstrom*, 2004 U.S. Dist. LEXIS 14324 at *5-6 (same); *Braman*, 715 F. Supp. at 228 (same).

In short, CETCO was not a party to the Consent to Assignment and therefore the Consent to Assignment did not create any duties or obligations flowing from CETCO to Drake. Accordingly, Drake's breach of contract claim based on the Consent to Assignment fails to state a claim and Count II must be dismissed pursuant to Rule 12(b)(6).

CONCLUSION

For the reasons set forth above, Defendant Colloid Environmental Technologies Company respectfully requests that the Court grant its Motion to Dismiss and enter an order dismissing Counts I, II, and III of Plaintiffs' Complaint, with prejudice, under Federal Rule of Civil Procedure 12(b)(6), and grant such further relief as the Court deems just and appropriate.

DATED: December 3, 2008

Respectfully submitted,

COLLOID ENVIRONMENTAL
TECHNOLOGIES COMPANY

By: __/s/ Jennifer A. Kenedy_____
          One of its Attorneys

Jennifer A. Kenedy (6216342)
Julia Webb (6294050)
LOCKE LORD BISSELL & LIDDELL LLP
111 South Wacker Drive
Chicago, IL 60606
Telephone: 312.443.0377
Facsimile: 312.896.6377

## CERTIFICATE OF SERVICE

I, Jennifer A. Kenedy, an attorney, hereby certify that on December 3, 2008, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT CETCO'S MOTION TO DISMISS COUNTS I, II, AND III OF PLAINTIFFS' COMPLAINT with the Clerk of the Court using the electronic case filing system, which will send electronic notification of such filing to the following:

E. Bryan Dunigan
The Law Offices of E. Bryan Dunigan
bdunigan@duniganlaw.com

> _____/s/ Jennifer A. Kenedy _____
> Jennifer A. Kenedy

# EXHIBIT 1

LBB DRAFT 7/30/03

## CONSENT TO ASSIGNMENT

This Consent to Assignment is dated as of August 4th, 2003 and is given by Drake Enterprises, Inc ("Drake").

### RECITALS

WHEREAS, Colloid Environmental Technologies Company, a Delaware corporation ("CETCO"), intends to acquire certain of the business assets of StrongSeal Recycled Rubberized Products, LLC, a Florida limited liability company ("SSRR") and Roof Treads, LLC, a Florida limited liability company ("RT"), pursuant to the terms of an Asset Purchase Agreement dated _____, 2003 by and among CETCO and SSRR, among others (the "Asset Purchase Agreement");

WHEREAS, Drake Enterprises, Inc. a Louisiana corporation ("Drake"), is the exclusive licensee of U.S.Patent No. 6194519, issued February 27, 2001 (the "Patent") concerning the manufacture of products useful as roof shingles and a process for making such products (the "Products");

WHEREAS, Drake and SSRR, as successor in interest to StrongSeal Roofing Company, LLC have entered into a Sublicense Agreement, dated January 18, 2001, whereby SSRR is the exclusive sublicensee of the Patent in certain western states of the United States;

WHEREAS, Drake and RT have entered into a Sublicense Agreement, dated December 12, 2001, whereby RT is the exclusive sublicensee of the Patent in certain eastern states of the United States (the "Eastern Sublicense Agreement") (the Western Sublicense Agreement and the Eastern Sublicense Agreement are collectively referred to herein as the "Sublicense Agreements");

WHEREAS, on September 3, 2001, by an Addendum [to the Sublicense Agreements], Monty C. McWilliams authorized SSRR and RT to manufacture products using his portion of the Patent in consideration for amounts paid pursuant to the sublicense Agreement;

WHEREAS, the Sublicense Agreements grant SSRR and RT the right to assign their rights and privileges under the agreements to others, with the consent of Drake and the right of first refusal thereto, and Drake is willing to grant such consent and waive its right of first refusal thereunder;

WHEREAS, SSRR and RT intend to assign all of their right, title and interest in and to the Sublicense Agreements to CETCO pursuant to the Asset Purchase Agreement;

### COVENANTS

Now, therefore, in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

762245_5

1.     Drake hereby consents to the assignment of the Sublicense Agreements to CETCO, pursuant to Section 9(e) "Other Provisions" of the Eastern Sublicense Agreement and Section 8(e) "Other Provisions" of the Western Sublicense Agreement.

2.     Drake hereby waives its right of first refusal with respect to such assignment, pursuant to Section 9(e) "Other Provisions" of the Eastern Sublicense Agreement and Section 8(e) "Other Provisions" of the Western Sublicense Agreement.

3.     Drake acknowledges and agrees that upon the assignment of the Sublicense Agreements by SSRR and RT to CETCO:

>  (i)    The Sublicense Agreements will continue in full force and effect in their entirety;
>
>  (ii)   SSRR and RT shall continue to be responsible for the performance of all of their respective obligations under the Sublicense Agreements which arise prior to the date of such assignment; and
>
>  (iii)  CETCO shall be responsible for the performance of any and all its obligations which arise after the date of such assignment.

4.     Drake agrees that CETCO shall pay to Drake a license fee equal to four percent (4%) of CETCO's net sales of the Products in the United States, as opposed to the six percent (6%) license fee referenced in Section 2(g) "Royalties" of the Eastern Sublicense Agreement and Section 1(g) "Royalties" of the Western Sublicense Agreement.

5.     Drake agrees the minimum royalty payments, as heretofore required by Section 2(h) "Royalties" of the Eastern Sublicense Agreement and Section 1(h) "Royalties" of the Western Sublicense Agreement shall be the following: 1) Drake agrees that there will not be any minimum royalties during the first six full calendar months following the date hereto, and 2) Drake agrees that thereafter, CETCO shall pay to Drake a minimum royalty of twelve thousand five hundred dollars ($12,500) for each full three calendar month period for both the Eastern and Western Sublicense Agreement. Drake agrees that the total minimum royalty payment to be paid under both the Eastern and Western Sublicense Agreements for a full calendar year shall be one hundred thousand dollars ($100,000).

6.     In the event of a default under the Sublicense Agreements by SSRR or RT, Drake shall give CETCO written notice of the default and CETCO shall have the opportunity to cure any such default within 30 days receipt of such written notice.

This Consent to Assignment has been executed by Drake as of the date written above.

DRAKE ENTERPRISES, INC.

By: _____

Name: _Monty McWilliams_

Title: _Exec. VP_

Witness: _____

2

762245_5